## VERBAL PROMISE TO PAY THE DEBT OF ANOTHER.

Circuit Court of Cuyahoga County.

THE CLEVELAND BRICK & CLAY COMPANY v. EDWIN C. GARVIN.

Decided, November 6, 1907.

*Statute of Frauds—Promise to Pay for Personal Services Being Rendered Another Must be in Writing.*

A promise by the officers of a corporation made to a physician, who is treating an injured employee of the corporation, that the corporation will pay for the services of the physician, is a promise to pay the debt of another, within the meaning of the statute of frauds, and must be in writing.

*Sealon & Paine,* for plaintiff in error.
*Frank C. Scott,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

Garvin is a physician; Perry H. Miller was an employee of the Cleveland Brick & Clay Co., a corporation. On the 14th day of March, 1905, Miller received an injury at the plant of the said brick company. Dr. Garvin was called to attend Miller professionally, and did give him the professional attention necessary on account of such injury during the time that he required such attention. He has not been paid. The bill for his services amounts to $50. For this amount on the said bill Garvin sued Miller and the brick company jointly, first, before a justice of the peace and then, on appeal, in the court of common pleas. No answer was filed by Miller, but the corporation filed an answer, denying the allegations of the petition. Upon a trial to the court and jury, judgment was recovered against this corporation, to reverse which this proceeding is prosecuted.

We have before us a bill of exceptions, containing all the evidence in the case, from which it appears that Dr. Garvin was called, on the day of the injury, to Miller's house, to give him the requisite attention. It is not certain that the doctor was called by Miller or any member of his family, though the probability is very strong that such was the case. Miller testifies that

he does not recollect that he directed him to be called, but says
that he does not recollect much about it, only that he knew that
he needed the doctor.    The following questions were put to him
on cross-examination:

"Q.   Didn't you send word to Dr. Garvin by some member
of your family, that you wanted him to come?    A. I can't say.
It don't seem to me as if I did.
"Q.   I suppose it was a matter of entire surprise to you then
when  Dr.  Garvin  appeared?    A. No,  not  surprise,  but  I
couldn't say positive whether I sent for the doctor by my wife,
or not.   I don't mind much about it."

From these and other questions, as has already been said, it
is probable that the doctor was called by some member of Mil-
ler's family.    This is made still more probable by the testimony
of Dr. Garvin himself, when he says in answer to the question,
"Do you know who it was who called you?"   A.  "No, my recol-
lection is it was a telephone message came from Miller's house,
giving the name and address."    In any event there is no evi-
dence tending to show that he was called by the corporation, or
by any person authorized in its behalf, nor is it claimed that he
was so called, but the claim made against the corporation for
these services is based upon what was said by Mr. Ring, who is
claimed to have been a superintendent of the company and au-
thorized to employ persons in its behalf.    The testimony of Dr.
Garvin in this matter is in substance that, on the third day
after he was called to attend Miller he met Mr. Ring, either on
the street or in the doctor's office, when Ring said:

"I am very sorry for Miller; he is one of our best men; he has
suffered intense pain; go ahead, take good care of him, do the
best you can for him and then present the entire bill to the com-
pany."

The doctor was then asked:

"Q.   Did you have any conversation with Ring other than
you have related, in regard to payment of the bill?    A. Yes.
"Q.   When was that?    A. At the same time.
"Q.   What further did he say?    A. I asked Ring distinctly,
'Do you have the authority to make this statement'?    I asked
him that, and he said yes, he was superintendent of the plant;

that no bill went through unless it was referred to him; that while Mr. Nichols was general manager, he referred all the bills to him, and no bill went through unless it had his approval or disapproval.''

After the completion of the services the doctor handed his bill to Mr. Ring, and Ring then said the bill was very reasonable, present it to the company and they will pay it. After the bill had been presented to Ring and this conversation was had, the doctor tells of a conversation he had with Mr. Nichols, the general manager of the company, and he says that in that conversation which was over the telephone, Nichols said ''Doctor, I got your bill in the Miller case for $50 and as regards the total amount, it is entirely satisfactory and we will pay it, but we must have an itemized bill.'' He says that he thereafter rendered the itemized bill and that the company refused to pay it.

On the part of the corporation it is urged that whatever was said by Ring or by Nichols, and to whatever extent they were either of them authorized to speak for the company, and whatever promise either of them made, was clearly a promise to become answerable for the debt of another person, and not being in writing, it comes within the statute of frauds, and therefore is not binding upon the company. This is the real question in the case, and as bearing upon this, attention is called to the testimony of Dr. Garvin, where the following questions and answers appear:

''Q.  Doctor, if you hadn't met Mr. Ring at all on the morning you met him, you would have continued to attend Mr. Miller, wouldn't you?  A. Certainly.

''Q.  Just as long as he required your services?  A. Yes, sir.

''Q.  So your meeting with Ring and the conversation which you had with him didn't affect in any way the rendering of the services which you were rendering to Miller. It simply affected the question of the party against whom you made your bill. Is that right?  A. Yes.''

From this it appears that Doctor Garvin's professional services were rendered not only in the first place, but all the way through, not because of any promise made to him on the part of the corporation, but because he was called upon professionally

by Miller to do so.  He made no inquiry as to who called him, but having undertaken to do what he could for this man, he expected to and would have done what any good and conscientious physician would do under such circumstances, without reference to the party by whom he was to be paid.

It seems clear to us that whatever promise was made by either Ring or Nichols comes within the provisions of the statute of frauds, Section 4199, Revised Statutes, which reads:

"No action shall be brought whereby to charge the defendant upon any special promise, to answer for the debt, *  *  *  of another person  *  *  *  unless the agreement upon which such action is brought or some memorandum or note thereof is in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized."

The fact that the suit was brought against Miller and the company shows that the doctor did not understand that Miller had been relieved from the obligation which he was under to pay for these services.  It is not like the case of *Estabrook* v. *Gebhart*, 32 Ohio St., 415, where, in consideration of the promise made by a third party the claim was given up against the original promisor.  There it was held that in such case, that is, where in consideration of the promise on the part of the third party it was agreed that the claim against the original promisor should be released, the promise was not within the statute.  This case is very like the case of *Birchell* v. *Neastor*, 36 Ohio St., 331, the first prosition of the syllabus reading:

"A let a contract to B for furnishing materials and building a house for a stipulated sum.  B employed C to furnish materials and to perform the labor of plastering.  When the building was completed, except a small part of the plastering, C, in the absence of B informed A that he would not finish the plastering unless A would agree to pay him, and A replied, 'Finish the plastering and I will see you paid.'  The obligations of B to complete the house and to pay C not being released,  *Held:* That the verbal promise of A to see C paid was within the statute of frauds."

In the opinion, at page 337, this language is used:

"It has been claimed that a new and distinct consideration passing between the creditor and the promisor will take the promise out of the statute, though the original debtor remains liable. This can not be the true test, as the statute can operate only on promises supported by a consideration; because promises, either in writing, or verbal, unsupported by a consideration, can not be enforced, either under the statute or independent of it, and certainly the statute requires a promise to answer for the debt, miscarriage or default of another, though supported by a consideration, to be in writing. It is unquestionably true, that whether or not the original debtor remains liable, is a very important fact in determining the nature of the new promise; but, after all, the controlling and ultimate question is, was the promise one to answer for the debt, default or miscarriage of another, or was it an agreement to make the old debt the debt of the promisor?"

In the case of *Crawford* v. *Edison*, 45 Ohio St., at 239, it is held:

"That a promise is not within the statute where the promisor was notified that certain work which was to have been paid for by another party, but which was for the benefit of the new promisor, would not be done unless the new promisor would pay for it, whereupon the new promisor directed the promisee to go on with the work and he would pay for it."

This was not within the statute because the promisee did work which he would not otherwise have done, and did it for the benefit of the new promisor; but in the case under consideration, as has already been pointed out, the work not only was being done when the promise relied on was made, but there was no intimation that the work would continue unless the corporation promised to pay for it, and there is the distinct testimony of the promisee that the promise in nowise affected him in the matter of performing the professional services sued for. From what has been said it follows that the first request made by the defendant below for a charge to the jury should have been given. That request reads:

"That the jury be directed to return its verdict for the defendant, the Cleveland Brick & Clay Company."

Of course, if this had been given, there would have been no occasion to give any of the other requests, but, if that were refused, the court should have given the second request which read:

"If the jury find from the evidence that the plaintiff, Dr. Garvin, was not employed by the defendant, the Cleveland Brick & Clay Co., to render the services performed by him prior to the time he commenced to render said services, and that the indebtedness of the defendant Miller, to Dr. Garvin for the services rendered to Miller, still exists, and did exist at the time of the making of the alleged promises of the Cleveland Brick & Clay Company to pay said debt, then the court says to you that the alleged promises made by the defendant, the Cleveland Brick & Clay Company were promises to pay the debt of another, and not being in writing, plaintiff can not recover as against the Cleveland Brick & Clay Company."

The refusal to give these requests constitutes error for which the judgment of the court below is reversed.

There is another error complained of, and this arises upon the introduction of evidence.

When Miller was upon the stand, he answered a question in this wise:

"Mr. Ring came to my place and he asked me about my foot, how bad it was, and I told him. Now, he says keep quiet and tell the doctor to take good care of it and the company will pay the doctor bill. He says, you tell Garvin that."

Motion was made on the part of the corporation to take this answer from the jury, which was overruled. This ruling was erroneous. The fact that Ring told Miller to tell the doctor that the company would pay the bill did not tend to show that the company had promised Garvin that the bill should be paid.

For the errors pointed out the judgment of the court below is reversed and the cause remanded for further proceedings.